IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADRIAN EHREN KONECNY,                                    No. 2:18-cv-01842-HZ

        Plaintiff,                                     OPINION & ORDER

     v.

COLLETTE PETERS, MICHAEL
GOWER, "JANE" AMSBERRY,
"JOHN" PEDRO, "JOHN DOE,"
"JANE" VAAFUSUAGA, "JOHN
DOE," "JOHN DOE," "JOHN DOE,"
and "JOHN DOE,"

        Defendants.

Franz Bruggemeier
OREGON JUSTICE RESOURCE CENTER
PO Box 5248
Portland, OR 97208

      Attorney for Plaintiff

Michael R. Washington
OREGON DEPARTMENT OF JUSTICE
Trial Division
1162 Court Street NE
Salem, OR 97301

      Attorney for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Adrian Ehren Konecny brings this § 1983 suit against Defendants Collette

Peters, Michael Gower, "Jane" Amsberry, "John" Pedro," "John Doe," "Jane" Vaafusuaga,

"John Doe," "John Doe," "John Doe," and "John Doe." Defendants move for summary judgment

arguing: (1) Plaintiff cannot establish an Eighth Amendment violation against Defendant

Vaafusuaga; and (2) Defendants Peters, Amsberry, Pedro, and Gower ("the Supervisory

Defendants") cannot be held liable under a theory of *respondeat superior*. Defendants also argue

that the "John Doe" Defendants should be dismissed as they have not been identified or served.

For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

On March 13, 2018, in the Disciplinary Segregation Unit ("DSU") at Eastern Oregon

Correctional Institution ("EOCI"), officers used OC/CS spray to extract an inmate from his cell.

Vaafusuaga Decl. ¶ 5. A significant amount of spray was used. *Id.* at Att. 2 at 14 (burst of spray

"far beyond normal"). Plaintiff was in a cell across the hall and ten feet down the tier. *Id.* at ¶ 7.

Plaintiff felt the effects of the spray soon after it was deployed. He felt like his throat was closing

up for the first thirty minutes after his secondary exposure. Bruggemeier Decl. Ex. 1 (Konecny

Dep.) 34:3-13. He coughed, gagged, and had a sore throat that evening. *Id.* at 52:18-25. His sore

throat continued for three or four days after his exposure. *Id.* at 55:11-17. Plaintiff talked to a

nurse about his sore throat, and both his medical record and a kyte document Plaintiff's

complaints about the effects of the spray. *Id.* at 55:7-10; DiGiulio Decl. Ex. 1 at 9, 10.

Defendant Vaafusuaga was the lieutenant in charge of special housing that evening. She

asserts that she was not notified by her staff that any inmates were complaining of secondary

exposure to the OC/CS spray and requesting showers. Vaafusuaga Decl. ¶ 8. She does not recall

speaking to Plaintiff that day. *Id.* Plaintiff, however, testified that he asked Defendant

Vaafusuaga for decontamination, but she did not listen. Bruggemeier Decl. Ex. 1 (Konecny

Dep.) 51:3-9. Plaintiff was not provided a shower until his regularly-scheduled shower time

twenty hours later. Am. Compl. ¶ 21.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th

Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218

(9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v.*

*Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the

light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108,

1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the

existence of a material issue of fact implausible, that party must come forward with more

persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured

by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by

a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir.

2006).

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim against

Defendant Vaafusuaga, and on Plaintiff's supervisory liability claims against Defendants Peters,

Amsberry, Pedro, and Gower (the "Supervisory Defendants"). Defendants also move to dismiss

the Doe Defendants. The Court addresses each issue in turn.

## I.      Deliberate Indifference

A prison official violates an inmate's Eighth Amendment rights if they are "deliberately

indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05

(1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a

"serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at

104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition

could result in further significant injury or the unnecessary and wanton infliction of pain[.]"

*Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted)

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

There is a dispute of fact as to whether Defendant Vaafusuaga was deliberately indifferent to Plaintiff's medical needs. Defendants submit some evidence to suggest that Defendant Vaafusuaga was not on notice of Plaintiff's possible exposure to chemical agents. Vaafusuaga Decl. ¶ 8. Plaintiff, however, testified that he requested decontamination from Defendant Vaafusuaga that evening. Bruggemeier Decl. Ex. 1 (Konecny Dep.) 51:3-9. Plaintiff did not receive a shower or any other decontamination until the next day. Am. Compl. ¶ 21. Thus, a reasonable jury could conclude that Defendant Vaafusuaga was aware of Plaintiff's risk of harm and yet failed to provide Plaintiff with adequate decontamination in the period following the deployment of chemical agents. *See Clement*, 298 F.3d at 905 ("In this case, the prisoners

may be able to show that the defendants were subjectively aware of the risk of serious injury

when they denied showers and medical attention for the inmates for the 4-hour period.").

Defendants also emphasize the competing concerns faced by Defendant Vaafusuaga that

evening in assembling and participating in the extraction team. Def. Mot. 16. But whether these

concerns are relevant to Defendant's subjective intent is for the jury to decide, particularly as the

extraction was complete before Plaintiff sought decontamination and many hours before Plaintiff

was given fresh air and a shower. *Clement*, 298 F.3d at 905 (finding that the plaintiffs might "be

able to show that the defendants were subjectively aware of the risk of serious injury when they

denied showers and medical attention for the inmates for the 4-hour period"). Because a

reasonable jury could conclude that Defendant knew of the risk of harm to Plaintiff and yet

delayed decontamination, she may be liable for deliberate indifference.[1]

## II.    Supervisory Liability

"[F]or a person acting under color of state law to be liable under section 1983 there must

be a showing of personal participation in the alleged rights deprivation: there is no respondeat

superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A

supervisor may be liable if there exists *either* (1) his or her personal involvement in the

constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's

wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The

requisite causal connection can be established . . . by setting in motion a series of acts by others

---

[1] Defendants also argue that they are entitled to qualified immunity on this claim, arguing
Plaintiff has not demonstrated that Defendants violated Plaintiff's Eighth Amendment rights.
Def. Mot. 17-19. Because this argument is duplicative of the Court's analysis regarding the
merits of Plaintiff's Eighth Amendment claim, the Court declines to address it separately.

or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)).  Thus, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

Turning first to Defendant Pedro, Plaintiff argues Defendant Pedro is liable as an Assistant Superintendent of EOCI in charge of the supervision of other EOCI officials. Pl. Br. 28. But there is no evidence in the record from which to infer that Defendant Pedro knew or should have known about the issues with improper decontamination or whether he was responsible for training, policymaking, or the discipline of EOCI officials. Thus, Plaintiff has not demonstrated a causal link between the action or inaction of Defendants Pedro and his injury. Accordingly, Defendant Pedro is dismissed from this case.

Second, the evidence does not demonstrate that Defendant Peters is liable. Defendant Peters has policymaking responsibilities related to the safekeeping of prisoners, Pl. Resp. 25 (citing Or. Rev. Stat. § 423.075(5)(d)), and she admitted that she had knowledge of both formal

and informal complaints from inmates that officers took too long to provide showers to inmates

who had been directly exposed to chemical agents, Bruggemeier Decl. Ex. 3 (RFA 4, 5).

Defendant Peters was also a named defendant in a handful of prisoner civil rights cases alleging

improper decontamination after direct and indirect exposure to OC spray while housed at Snake

River Correctional Institution ("SRCI"). *See* Pl. Resp. 26, 29. But even viewing the facts in the

light most favorable to Plaintiff, knowledge of inadequate decontamination after indirect

exposure at a different ODOC facility does not establish that Defendant Peters was on notice that

ODOC procedures, policies, or training for decontamination after secondary exposure were

inadequate or unconstitutional at EOCI. *See Clement*, 298 F.3d at 905 (where inmates recited

"numerous instances of the use of pepper spray that allegedly harmed uninvolved bystander

inmates" the court concluded that a factfinder could find that policymakers were on "actual or

constructive notice of the need to train" (quotations omitted)).

Defendants are also entitled to summary judgment on the claim against Defendant

Amsberry. Plaintiff cites evidence that Defendant Amsberry believed that prison policy did not

require a shower for inmates who were indirectly exposed to chemical agents. Bruggemeier

Decl. Ex. 14 (Response to Interrogatories 1, 2). But there is no evidence in the record as to the

responsibilities or authority of Defendant Amsberry in her role as the Superintendent of EOCI.

Without this evidence, no reasonable jury could find that her actions, inactions, or acquiescence

to a policy could be the moving force behind Plaintiff's injury. Accordingly, the claim against

Defendant Amsberry is dismissed.

Finally, Defendants are entitled to summary judgment on the claim against Defendant

Gower. Plaintiff cites evidence that Defendant Gower—Assistant Director of Operations at

ODOC—may have had knowledge of complaints regarding improper decontamination after

8 – OPINION & ORDER

indirect exposure to chemical agents at SRCI, Pl. Resp. 29 (citing lawsuits), and argues generally

that Defendant Gower was in the "chain of command" that would have interpreted ODOC policy

not to apply to indirectly exposed individuals, *id.* at 28. But there is no evidence that Defendant

Gower knew of issues with the decontamination protocol at EOCI. Nor is there evidence of his

authority or responsibilities as the Assistant Director of Operations. As with Defendant

Amsberry, no reasonable jury could find that Defendant Gower's actions, inactions, or

acquiescence to a policy could be the moving force behind Plaintiff's injury. Accordingly, the

claim against Defendant Gower is dismissed.

### III.    Doe Defendants

Defendants also move to dismiss the "Doe Defendants." Rule 4(m) of the Federal Rules

of Civil Procedure requires a plaintiff to serve a defendant within 90 days after he files the

complaint. The 90-day service deadline runs from the date of the original complaint for any

named Doe defendant. *See Third World Media, LLC v. Does 1-1568*, No. C. 10-04470 LB, 2011

WL 4344160, at *2 (N.D. Cal. Sept. 15, 2011) (finding that, absent a showing of good cause, a

court may dismiss a complaint for failure to serve Doe defendants within the time allowed by

Rule 4(m)); *see also Sedaghatpour v. California*, No. C07-01802 WHA, 2007 WL 2947422, at

*2 (N.D. Cal. Oct. 9, 2007) ("Furthermore, the Court may dismiss 'Doe' defendants who are not

identified and served within 120 days after the case is filed pursuant to FRCP 4(m)."). In

response to Defendants' Motion for Summary Judgment, Plaintiff contends that Defendants

prevented Plaintiff from learning the Doe Defendants' identities by objecting to Plaintiff's

request for the names of these individuals as untimely and overbroad. Pl. Resp. 2 n.1. Plaintiff,

however, does not argue that Defendants' objection was improper. Nor did Plaintiff make further

attempts to discover the Doe Defendants' identities after the discovery period was extended and

Plaintiff obtained counsel. Accordingly, Defendants' motion is granted as to the "Doe"

Defendants, and they are dismissed from this case.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary

Judgment [43]. Defendants Peters, Amsberry, Pedro, Gower, and the five "John Doe"

Defendants are dismissed from this case.

IT IS SO ORDERED.


DATED:_____March 29, 2021_____.




_____
MARCO A. HERNÁNDEZ
United States District Judge